FILED

2012 Oct-01  PM 05:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ELIZABETH ANN HOLLOWAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 2:12-CV-2216-TMP |
| v. | ) | |
| | ) | |
| AMERICAN MEDIA, INC. and | ) | |
| THE NATIONAL ENQUIRER, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS
## AND FOR PARTIAL SUMMARY JUDGMENT

**WOOD, HERNACKI & EVANS, LLC**          **LITTELL LAW FIRM**

L. Lin Wood                                        C. Elizabeth Littell Courson
lwood@whetriallaw.com                    Alabama Bar No.s
Georgia Bar No. 774588                     ASB-5342-L75L
(admitted *pro hac vice*)                    LIT 028
Stacey Godfrey Evans
sevans@whetriallaw.com                    elizabeth@littell-law.com
Georgia Bar No. 298555
(admitted *pro hac vice*)                    P.O. Box 242606
                                                          Montgomery, AL 36124
1180 West Peachtree Street                334-649-0076
Suite 2400
Atlanta, Georgia 30309
404-891-1402
404-506-9111 (fax)

*Counsel for Plaintiff Beth Holloway*

## **TABLE OF CONTENTS**

**INTRODUCTION**…………………………………………………..…………1

**PROCEDURAL AND FACTUAL BACKGROUND**………………….………..4

**ARGUMENT AND CITATION OF AUTHORITY**………………………...….8

I.   Standard of review…………………………………………………8

    A.   Motion to dismiss standard………...……………………………...8

    B.   Motion for summary judgment standard………………………9

II.   The First Amendment does not bar Ms. Holloway's claims..………………...9

    A.   Defendants' false statements are not protected by the
        First Amendment……………………………………………9

    B.   Ms. Holloway is permitted to recover for the damages
        caused by the false articles upon a showing of actual malice…..……11

    C.   No "of and concerning" requirement exists for the tort
        of outrage and the invasion-of-privacy claim…………………………14

III.   Ms. Holloway has stated a claim for outrage………….………………18

    A.   Ms. Holloway has alleged all elements of a claim for outrage……….18
        1.   *Defendants' conduct was outrageous*…………………...…19
        2.   *Ms. Holloway has met the severe emotional*
            *distress requirement for the tort of outrage*……………………23

    B.   Media defendants are not immune from liability under
        the tort of outrage……………………………………………..25

    C.   Ms. Holloway's tort of outrage is not barred by any
        "of and concerning" requirement……………………………..26

IV.   Ms. Holloway has stated a claim for invasion of privacy…………………. 27

    A.   Ms. Holloway has alleged a personal right to privacy………..………27

    B.   Even if Ms. Holloway's invasion-of-privacy claim were
        based on a "relational" right to privacy, her allegations
        state a claim……………………………………………………...29

    C.   Ms. Holloway states a claim for invasion of privacy
        even when the matter is of public concern……………………………30

V.   Ms. Holloway's claims are not time-barred…………………………………32

    A.   Ms. Holloway's claims for outrage and invasion of privacy
        accrued upon her emotional distress in learning of the
        June 2010 Article, which was after September of 2010………………32

    B.   Alabama law has not held that the torts of outrage and
        invasion of privacy accrue upon publication, despite
        recognizing a single-publication rule in defamation actions….………34
        1.   *Alabama focuses on the type of injury in order to*
           *determine when a cause of action accrues*……………………...34
        2.   *The single-publication rule has been limited in*
           *Alabama to defamation actions*…………………………………36

    C.   Even if the Court were to find that the "publication date"
        determines when the torts of outrage and invasion of privacy
        accrued, Defendants have failed to meet their burden……..…………37

**CONCLUSION**………………………………………………………...…………41

Plaintiff Elizabeth (Beth) Ann Holloway ("Ms. Holloway") responds to the Motion to Dismiss and for Partial Summary Judgment filed by Defendants American Media, Inc. and The National Enquirer, Inc. (collectively "Defendants"), showing the Court as follows:

## INTRODUCTION

A child disappears on a high school vacation and while missing, her mother is exposed to *The National Enquirer* informing the public that her daughter was buried alive and left to die in a filthy, boggy swamp and that her body was tossed in a corpse filled casket—statements *The National Enquirer* knew were false when it published them and statements the tabloid knew would cause the mother severe emotional distress.  Now, when the mother (Plaintiff, Ms. Holloway) seeks redress for the emotional harm she suffered when subjected to such false and outrageous statements about her daughter (Natalee Holloway), Defendants claim she has no legal remedy.  Defendants claim that the First Amendment grants *The National Enquirer* absolute immunity to say whatever it wishes about Ms. Holloway's daughter, how she was buried and how her body was treated, regardless of how false and outrageous the statements are and regardless of the severity of the damage suffered by Ms. Holloway as a result of such statements.  Defendants' assertion that the doors to the courthouse are locked and cannot be entered by Ms.

Holloway to redress this type of wrongdoing insults the basic concept of justice upon which our legal system is based.

Adding procedural insult to substantive injury, Defendants seek an order dismissing Plaintiff's case on a premature motion for summary judgment without Plaintiff even being allowed to engage in discovery.[1]

In an effort to concoct a legal basis to support this clearly unjust result to Ms. Holloway, Defendants' motion seeks to expand First Amendment protection far beyond established precedent by arguing that literally all statements regarding a matter of public concern are protected by the First Amendment.  Such blanket immunity is unsupported by First Amendment authorities and should be rejected by this Court.  False statements published with actual malice, that is, false statements made with actual knowledge of falsity or with a reckless disregard for the truth are <u>not</u> protected by the First Amendment.  Media defendants cannot publish calculated falsehoods with immunity just because they relate to a matter of public concern.  Because Ms. Holloway has pleaded and presents evidence that Defendants published false statements with actual malice about her daughter's burial and treatment of her body, their motion should be denied.

---

[1] Plaintiff files her Motion to Stay Consideration of Defendants' Motion for Partial Summary Judgment simultaneously herewith, asking the Court to allow Plaintiff discovery on the issues of falsity, actual malice, damages, and the statute of limitations in order for this Court to have the benefit of a full and complete factual record before ruling on Defendants' Motion.

Defendants contend that Ms. Holloway cannot maintain her state law claims for outrage and invasion of privacy.  However, a review of the three articles at issue reveals false, graphic details, headlines, and pictures regarding Natalee's purported burial and treatment of her body that establish outrageous conduct by Defendants and invade Ms. Holloway's emotional sanctum.  While Defendants did not actually themselves bury Natalee alive in a filthy, boggy swamp and toss her body into a corpse-filled casket, the effect on Ms. Holloway was the same as if they had done so.  By falsely stating that these horrible events about Ms. Holloway's daughter had occurred, they created the same emotional damage to Ms. Holloway as if they had themselves actually performed these gruesome, inhumane, and outrageous acts.  In short, falsely publishing that these acts occurred is outrageous and comparable to performing the acts in terms of their impact.

Defendants never argue that their articles did not cause Ms. Holloway extreme emotional distress—they cannot do so because they were well aware of her suffering—instead, they argue that she cannot bring any claims stemming from the articles because they are not "of and concerning her," a requirement for defamation claims, not the claims of outrage and invasion of privacy alleged here.

Defendants' efforts to bar Ms. Holloway from seeking redress for the extreme emotional distress they have knowingly caused her know no bounds.  In addition to misstating the law regarding their First Amendment protection and the

3

"of and concerning" requirement, Defendants attempt to apply the statute of limitations standard for defamation to the outrage and infliction of emotional distress claims here, which is inapplicable.  Plaintiff has stated claims under Alabama law within two years of suffering emotional distress, which meets the required standard, and Defendants' motion must be denied.

## PROCEDURAL AND FACTUAL BACKGROUND

Ms. Holloway filed her claims for outrage and invasion of privacy on June 20, 2012.  *See* Compl. [Doc. 1].  Ms. Holloway did not file any defamation claims. Instead of answering the complaint, Defendants filed a motion to dismiss and for partial summary judgment [Docs. 16-17].  Defendants made no effort to identify which claims they are seeking to dismiss or for which claims they are seeking summary judgment.  No discovery has yet taken place.

Natalee was last seen on May 30, 2005 in Aruba with Joran van der Sloot (who is widely believed to be Natalee's killer).  Compl. ¶16.  Neither Natalee nor her remains have ever been located.  *Id.* at ¶18.  In what Defendants acknowledge was understandable conduct, upon her daughter's disappearance, Ms. Holloway made many media appearances in an effort to generate interest in her plight and efforts to find her daughter.  Defs.' Br. [Doc. 17] at 7.  She has continued to make media appearances and write about Natalee's disappearance in the hopes that she will learn what happened to her daughter.  Stracher Affid. ¶27; Compl. ¶25.

4

Defendants have published articles since July 2005 with headlines, statements, and photographs that are false and outrageous in character.  *Id.* at ¶¶27-29.  Ms. Holloway has previously addressed with Defendants pre-2010 articles.  *See* Second Affidavit of Beth Holloway ("2nd E.H. Affid.") ¶¶5,10.[2]  In this action, Ms. Holloway seeks damages for false statements in three articles dated June 28, 2010, December 6, 2010, and April 25, 2011 (the "articles").  Compl. Ex.s 1-3.

The June 28, 2010 Article contained this headline:  JORAN'S SECRET HAND-DRAWN MAP TO NATALEE'S GRAVE FOUND! Killer tricked into FINALLY revealing truth; BOMBSHELL NEW EVIDENCE."  Compl. ¶37.  The article included statements that the map gave a "precise location in the Bubali area of Aruba where Joran says Natalee's body was buried" and described the Bubali Bird Sanctuary as an "ideal" location for "disposal" of a body because it is downstream from a water treatment facility.  *Id.*  The article included a cover photograph of a scenic view of an "Aruba Nature Park" juxtaposed with a photograph of Natalee and a mug shot of van der Sloot.  *Id.*

Ms. Holloway saw the June 28, 2010 Article sometime in or after September 2010 upon her return from visiting Castro Castro prison in Lima, Peru, where she had gone to visit van der Sloot in an attempt to learn what happened to Natalee.  First Affidavit of Beth Holloway ("1st E.H. Affid.") (Exhibit A) ¶15.  The visit

_____

[2] Plaintiff has filed a motion to file her second affidavit under seal simultaneously herewith.

was the end of several months of discussions between Ms. Holloway and van der Sloot.  He promised to show her where he allegedly buried Natalee in exchange for money.  Van der Sloot never delivered as promised and Ms. Holloway found herself back to square one.  *Id.* ¶12.  Upon seeing the June 28, 2010 Article, Ms. Holloway was distraught.  She had spent months searching and negotiating with a killer in an effort to find out what happened to her daughter and now a tabloid magazine had made up a story filled with lies about where her daughter's body was located.  *Id.* ¶¶16-19.  She could not eat or sleep, she lost weight, she had panic attacks, and she was constantly faint and nauseated.  *Id.* ¶14.  Her distress reached such a level that she feared she would be hospitalized.  *Id.* ¶17.

The December 6, 2010 Article reached a new low in tabloid journalism.  The article claimed that Natalee was buried alive, boasting a disturbing headline: "NEW BONE EVIDENCE: NATALEE WAS BURIED ALIVE! Joran's secret graveyard with 5 MORE BODIES; Killer's sickening confession CAUGHT ON TAPE!"  Compl. ¶67.  The article contained a photograph of four uniformed workers digging dirt out of a "graveyard" in a swampy area and police officers on the side of the road supposedly viewing the "graveyard" juxtaposed with photographs of Natalee and van der Sloot.  *Id.*  The false claims in this article were Ms. Holloway's worst nightmare.  1st E.H. Affid. ¶26.  When she saw the article, she became physically ill and had constant nightmares and thoughts of Natalee

6

suffocating, choking, and attempting to dig out of her grave.  *Id.* ¶27.

Finally, *The National Enquirer* published an article claiming that Natalee was "tossed" in a "corpse filled casket."  Compl. ¶102.  This article left Ms. Holloway wishing the writers of these horrendous and indescribably painful articles would imagine how they would feel if they saw a similar story written about their own children.  1st E.H. Affid. ¶29.  The pain of the vision of her daughter tossed into a corpse filled casket like a piece of garbage caused Ms. Holloway debilitating pain, which is continuous because the image created from the article does not go away.  *Id.* ¶30.

Defendants knowingly published these articles without any reliable, trustworthy, or credible sources.  Compl. ¶127.  The articles were completely false.  Compl. ¶¶38-41, 68-74, 103-107.  Natalee's body has never been found.  *Id.*; 1st E.H. Affid. ¶23.  Defendants published the articles with actual malice in that they published them with knowledge of falsity or with a reckless disregard for truth.  Compl. ¶122; 2nd E.H. Affid. ¶20.  The articles constitute extreme and outrageous conduct that caused Ms. Holloway emotional distress so severe that no reasonable person could be expected to endure it.  Compl. ¶¶63, 98, 120, 134-35; 1st E.H. Affid. ¶5.  The articles also invaded Ms. Holloway's privacy through an invasion of her emotional sanctum in a way that is highly offensive to a reasonable person. Compl ¶¶138-39; 1st E.H. Affid. ¶5.

## ARGUMENT AND CITATION OF AUTHORITY

**I.**    **Standard of review.**[3]

**A.**    **Motion to dismiss standard.**

A motion to dismiss should not be granted when there are enough facts "to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Chaparro v. Carnival Corp.*, 2012 WL 3832314, *3, -- F. 3d -- (11th Cir. Sept. 5, 2012) (reversing the district court's grant of a motion to dismiss) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).[4]  The complaint need only have sufficient factual matter that, accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *White v. Vivier Pharma Corp.*, 2012 WL 1424916, at *1 (N.D. Ala. Apr. 19, 2012) (*quoting Iqbal*, 556 U.S. at 678).  This Court recognizes that dismissing a claim on "an underdeveloped record" is "premature and inappropriate." *White*, 2012 WL 1424916, at *3.

---

[3] Defendants filed a motion to dismiss and a motion for partial summary judgment, but did not state which claims were subject to which motion.  Ms. Holloway will address below specific standards of review as it relates to her claims, but the general standards of review are set out in this section.

[4] All unpublished opinions are attached hereto at Exhibit C.

**B.     Motion for summary judgment standard.**

A motion for summary judgment should only be granted if there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. Proc. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  In ruling on a motion for summary judgment, the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in favor of the non-movant.  *Anderson*, 477 U.S. at 255.  The judge is not to make credibility determinations, weigh evidence, or draw inferences from the facts— those are jury functions.  *Id.*  For issues that the non-movant bears the burden at trial, the movant must show that there is an absence of evidence to support the non-movant's case or evidence showing that the non-movant would not be able to prove the case at trial.  *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993).  But for issues on which the movant bears the burden, the movant must affirmatively show the absence of a genuine issue of material fact.  *Id.* at 1115.

**II.     <u>The First Amendment does not bar Ms. Holloway's claims.</u>**

**A.     Defendants' false statements are not protected by the First Amendment.**

Ms. Holloway admits that the articles address matters that courts would find are matters of public concern, but that admission does not bar her claims.  To read Defendants' brief, one would believe that the protections of the First Amendment are endless and absolute.  But there are communications—even about matters of

public concern—that are not protected by the First Amendment.  False statements
are entitled to no protection:

> Although honest utterance, even if inaccurate, may further the
> fruitful exercise of the right of free speech, it does not follow
> that the lie, knowingly and deliberately published about a public
> official, should enjoy a like immunity … Calculated falsehood
> falls into that class of utterances which 'are no essential part of
> any exposition of ideas, and are of such slight social value as a
> step to truth that any benefit that may be derived from them is
> clearly outweighed by the social interest in order and
> morality … Hence the knowingly false statement and the false
> statement made with reckless disregard of the truth, do not enjoy
> constitutional protection.

*Garrison v. Louisiana*, 379 U.S. 64, 75 (1964).

The First Amendment simply does not immunize all statements regarding
matters of public concern:  calculated falsehoods or statements made with malice
or reckless disregard of the truth are not protected by the First Amendment.  *Time,
Inc. v. Hill*, 385 U.S. 374, 389-90 (1967) ("[t]he constitutional guarantees can
tolerate sanctions against calculated falsehoods without significant impairment of
their essential function"); *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964);
*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974) ("There is no constitutional
value in false statements of fact."); *see also Morgan v. Tice*, 862 F.2d 1495, 1499
(11th Cir. 1989) (proof that statements are false removes First Amendment
protection); *Silvester v. American Broadcasting Companies, Inc.*, 892 F.2d 1491,
1498 (11th Cir. 1988) (same).

Defendants' reliance on *Snyder v. Phelps* is misplaced.  In that case, there was no finding that the statements were false.  Indeed, the Court noted and did not challenge the Fourth Circuit's characterization of the statements as "not provably false."  131 S. Ct. 1207, 1214 (2011).  In this case, Ms. Holloway has alleged and presented evidence that the statements in the articles involve false headlines, statements, and photographs.  Compl. ¶¶38-41, 68-74, 103-107; 1st E.H. Affid. ¶23; 2nd E.H. Affid. ¶20.  Thus, they are not protected by the First Amendment.[5]

**B.    Ms. Holloway is permitted to recover for the damages caused by the false articles upon a showing of actual malice.**

Even in matters of public concern, the plaintiff is permitted to recover damages with proof that the defendant published the information with knowledge of its falsity or with reckless disregard for the truth.  *Time, Inc.*, 385 U.S. at 388.  A defendant acts with reckless disregard if, at the time of publication, he "entertained serious doubts as to the truth of [its] publication" or acted "with a high degree of awareness of … [its] probable falsity."  *Cottrell v. Nat'l Collegiate Athletic Ass'n*,

---

[5] Defendants argue that it does not matter whether their statements are false, relying on an out-of-context statement in *United States v. Alvarez*.  Defs.' Br. at 27. In *Alvarez*, the United States Supreme Court was examining the Stolen Valor Act, and stated that it would not accept the government's position that "false statements receive no First Amendment protection."  132 S. Ct. 2537, 2545 (2012).  Rather, the Court noted that even in defamation or fraud cases, the Court has always instructed that "falsity <u>alone</u> <u>may not</u> suffice to bring the speech outside the First Amendment.  The statement must be a <u>knowing or reckless falsehood</u>."  *Id.* (emphasis added).  Therefore, the Court reiterated its prior holdings that calculated or reckless falsehoods receive no First Amendment protection. *(*emphasis added).

975 So. 2d 306, 349 (Ala. 2007) (*quoting McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501, 1508 (C.A.D.C. 1996)).  Malice can be shown with circumstantial evidence, including evidence showing "that the story was (1) fabricated, (2) so inherently improbable that only a reckless man would have put [it] in circulation, or (3) based wholly on a source that the defendant had obvious reasons to doubt, such as an unverified anonymous telephone call." *Id.* (internal quotations omitted).

Although the First Amendment imposes a substantive requirement regarding the state of mind that Ms. Holloway must ultimately prove, the First Amendment does not require her to prove that state of mind in the complaint.  *In re BFW Liquidation, LLC*, 471 B.R. 652, 663 (N.D. Ala. 2012).  "The existence *vel non* of actual malice is a question of fact which cannot be resolved on a motion to dismiss for failure to state a claim upon which relief may be granted."  *Id.*; *see also Flowers v. Carville*, 310 F.3d 1118, 1130-31 (9th Cir. 2002) (reversing district court's dismissal of defamation and false light claims); *Belli v. Orlando Daily Newspapers, Inc.*, 389 F.2d 579, 589 (5th Cir. 1967) (reversing district court's dismissal of complaint for libel; allegations of actual malice sufficient to survive dismissal).

In *Flowers*, the court held that because the complaint identified the precise statements alleged to be false and defamatory, including who made them and

when, the complaint was sufficient and should not be dismissed.  310 F. 3d at

1131.  Averring the required state of mind generally, even without alleging

corroborating evidence does not defeat the complaint.  *Id.*  Federal Rule of Civil

Procedure 9(b) only requires that "[m]alice, intent, knowledge, and other

conditions of a person's mind may be alleged generally."  *Id.* at 1130 (*citing Belli*,

389 F.2d 579, 589 (5th Cir. 1967)).  Courts recognize that because actual malice is

a subjective standard, it is usually proven by evidence outside of the publication

itself and cannot be disposed of by a motion to dismiss prior to discovery.  *See*,

*e.g.*, *BFW Liquidation*, 471 B.R. at 663 and *Flowers*, 310 F. 3d at 1130.

Here, Ms. Holloway has sufficiently pleaded her claims:  the Complaint

identifies the precise statements alleged to be false.  Compl. ¶¶37-41, 67-74, 102-

107.  It alleges who made the statements.  Compl. ¶¶10-13, 27-31, 34-35, 65, 100.

It alleges when the statements were made.  Compl. ¶¶ 27-30, 34-35, 65, 100.  And

finally, it alleges Defendants' state of mind.  Compl. ¶¶42-49, 51-53, 55-57, 59-62,

75-84, 86-88, 90-92, 94-97, 108-114, 116-119, 122-133.

Further, here, given the parties' history, Defendants publication of such

outrageous falsities was at least reckless because they always had the ability to

contact Ms. Holloway to verify information about whether Natalee's remains had

been located and they did not do so.  2nd E.H. Affid. ¶23.  Ms. Holloway has

presented evidence that Defendants published the false statements and photographs

with actual malice. *Id.* ¶20.  And additional evidence regarding actual malice is in the possession of Defendants and their agents and third parties.  Affidavit of L. Lin Wood ("Wood Affid.") (Exhibit B) at ¶¶8-9.  Defendants are entitled to the opportunity to discover this information prior to a summary dismissal.  *Jones v. City of Columbus, Ga.*, 120 F.3d 248, 253 (11th Cir. 1997) ("the party opposing a motion for summary judgment should be permitted an adequate opportunity to complete discovery prior to consideration of the motion"); *see also Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) ("A party opposing summary judgment should be given the opportunity to discover information relevant to the summary judgment motion."); *Snook v. Trust Co. of Georgia Bank of Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988) ("[i]f the documents or other discovery sought would be relevant to the issues presented by the motion for summary judgment, the opposing party should be allowed the opportunity to utilize the discovery process to gain access to the requested materials").

**C.    No "of and concerning" requirement exists for the tort of outrage and the invasion-of-privacy claim.**

Defendants' argument that Ms. Holloway must establish that the articles are "of and concerning" her is misplaced because she has not alleged any defamation claims.  Most of the cases that Defendants cited deal with defamation such that they are inapplicable in this case.  And the cases that do involve other torts offer no support to Defendants.  Putting aside as irrelevant the cases that dealt only with

14

defamation[6] (discussed at Defs.' Br. at 23-24), even in cases involving other claims, there is no constitutional requirement for Ms. Holloway to establish that the articles are "of and concerning" her.[7]

Inexplicably, to support their "of and concerning" argument, Defendants cite *Hustler Magazine, Inc. v. Falwell*, in which Falwall, a public figure, sued the defendant for invasion of privacy, libel, and intentional infliction of emotional distress. 485 U.S. 46, 48 (1988).  At issue in that case, however, was whether the parody in the magazine was protected by the First Amendment and whether the tort of intentional infliction of emotional distress required a showing of actual malice—not whether it was "of and concerning" Falwell.  *Id.* at 56.  In that case, the Supreme Court held that a public figure cannot recover for the tort of intentional infliction of emotional distress "without showing in addition that the publication

---

[6] Although *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006), also deals with other claims, the sentence partially quoted by Defendants (Defs.' Br. at 25) is taken out of context; "of and concerning" was <u>not</u> discussed as a requirement for any cause of action except defamation.

[7] Although Ms. Holloway has no burden to show that the articles are "of and concerning" her, Ms. Holloway is identified in the articles, such that they actually are "of and concerning" her.  Compl. Ex. 1 at pp. 14, 16-17 (picturing and identifying Natalee's parents) (referring to "the brokenhearted family") ("The Holloway family has gone through hell for five years—they deserve final closure on what happened to Natalee."); Compl. Ex. 2 at pp. 20, 24 ("Natalee's mom Beth Twitty with Dutch journalist Peter De Vries, who has been involved in the case from the beginning.") (alleging that a map was turned over to the Holloway Family); and Compl. Ex. 3 (quoting an investigator "who investigated the case for Natalee's family").

contains a false statement of fact which was made with 'actual malice,' i.e., with knowledge that the statement was false or with reckless disregard as to whether or not it was true." *Id.* The Supreme Court held that the First Amendment would not permit damages on the intentional infliction of emotional distress claim when the publication was a caricature in the ad parody, and could not reasonably be understood as describing actual facts. *Id.* at 57.

Here, however, there is no parody at issue. Rather, Defendants asserted in their brief that they "reported" facts in the articles. *See, e.g.*, Defs.' Br. at 1 ("she brings claims … based on reporting by the National Enquirer"), 10 ("AMI was one of many media outlets that reported on Natalee Holloway's disappearance."), and 11-16 (description of articles as reporting).

Defendants also cite *Foretich v. Advance Magazine Publishers, Inc.*, in which a husband and his parents brought a suit against a publisher for libel and intentional infliction of emotional distress. 765 F. Supp. 1099, 1104 (D.D.C. 1991). This case implies only that to the extent "of and concerning" is a requirement, it can be met for the emotional distress claim with specific evidence that defendants knew their action would cause emotional distress. *See* 765 F. Supp. 1099, 1104-05 (no claim where plaintiff did not present evidence that defendants knew article would cause him emotional distress). Here, Ms. Holloway

16

presents evidence that Defendants knew or should have known that the statements in the Article would inflict emotional distress upon her.  2nd E.H. Affid. ¶19.[8]

The cases cited by Defendants do not impose any requirement for Ms. Holloway to establish that the articles are "of and concerning" her.  The gravamen of Ms. Holloway's allegations is that the publication of the articles was outrageous and caused emotional distress and invaded Ms. Holloway's privacy through an invasion of her emotional sanctum.  With those causes of action and the subject of the articles in this case, it is illogical to impose a requirement that the articles must be "of and concerning" Ms. Holloway herself.  Indeed, as implied in *Foretich*, such a requirement could be met with evidence showing that Defendants intended to or knew or should have known that their actions would cause Ms. Holloway distress, which Ms. Holloway has submitted.  2nd E.H. Affid. ¶19.

Ms. Holloway's complaint therefore stands.  To the extent that Defendants ask the Court to grant summary judgment on the claims due to First Amendment

---

[8] Defendants also cite *Blatty v. New York Times Co.*, in which an author sued the New York Times Co. for its failure to include his book on the best sellers list for trade libel, negligent interference with prospective economic advantage, intentional interference with prospective economic advantage, and negligence. 42 Cal. 3d 1033, 1036 (Cal. 1986).  The court held that the "of and concerning requirement" applies "to all claims whose gravamen is the alleged injurious falsehood of a statement."  *Id.* at 1042.  The court noted that the requirement is to prevent claims that "merely complain of nonspecific statements that they believe cause them some hurt."  *Id.* at 1044.  In this case, the author could not meet the requirement because his very complaint was the failure to include him in the list.  *Id.* at 1046.  None of the causes of action in that case, however, dealt with torts where the emotional distress is the heart of the complaint.

concerns, Defendants have failed to acknowledge the applicable actual malice

standard, much less argued that there is no genuine issue of material fact regarding

malice.  Fed. R. Civ. P. 56.  Because Defendants have not pointed to any absence

of evidence regarding malice, Defendants did not meet their burden on summary

judgment.  *Fitzpatrick*, 2 F.3d at 1115-16.

**III.    Ms. Holloway has stated a claim for outrage.**

**A.    Ms. Holloway has alleged all elements of a claim for outrage.**

Alabama recognizes the tort of outrage, stating that "[o]ne who by extreme

and outrageous conduct intentionally or recklessly causes severe emotional distress

to another is subject to liability for such emotional distress and for bodily harm

resulting from the distress."  *Whitt v. Hulsey*, 519 So. 2d 901, 903-904 (Ala. 1987)

(*quoting Am. Road Serv. Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1980)).

A plaintiff must show the following elements for the tort of outrage:

1) that the actor intended to inflict emotional distress or that he knew or
   should have known that emotional distress was the likely result of his
   conduct;

2) that the conduct was extreme and outrageous;

3) that the actions of the defendant were the cause of the plaintiff's distress;
   and

4) that the emotional distress sustained by the plaintiff was severe.

*U.S.A. Oil, Inc. v. Smith*, 415 So. 2d 1098, 1100 (Ala. Civ. App. 1982) (internal

quotations omitted); *see also Horne v. TGM Assocs., L.P.*, 56 So. 3d 615, 630 (Ala.

2010).  Here, Defendants only challenge the elements that their conduct was

outrageous and that Holloway experienced severe emotional distress.  Ms.

Holloway has sufficiently pleaded the tort of outrage in her complaint, and

Defendants have not offered any evidence that she will not be able to prove her

case.  Further, Ms. Holloway presents evidence that, as a result of the articles, she

did suffer emotional distress so severe that no reasonable person would be

expected to endure it.  *See generally* 1st E.H. Affid.

### 1.   *Defendants' conduct was outrageous*.

In order for outrageous conduct to be submitted to a jury, there must only be

"sufficient evidence from which permissible inferences could be drawn to support

a finding of the extreme conduct necessary to constitute outrageous conduct."

*Whitt*, 519 So. 2d at 904 (*quoting Empiregas, Inc. of Gadsden v. Geary*, 431 So.2d

1258, 1261 (Ala. 1983)).  Ms. Holloway has pleaded and presented sufficient

evidence here.

In this case, Defendants have published, with malice and reckless disregard

for truth, graphic statements regarding Natalee's purported "burial" and her alleged

corpse.  Ms. Holloway has identified each false and outrageous statement in her

complaint, but those statements include claims that Natalee was buried alive,

tossed in a corpse filled casket, "buried and left to die in a filthy, boggy swamp,"

and buried in a bird sanctuary downstream from a water treatment plant.  Compl.

¶¶ 37, 67, and 102.  Defendants published these outrageous statements without verifying the truth of the information, which they could have done at any time given that the parties have a history and Defendants always knew how to reach Ms. Holloway.  *See generally* 2nd E.H. Affid.

Under Alabama law, not to mention in society, "[g]reat respect is afforded to the resting place of the dead."  *Gray Brown-Service Mortuary, Inc. v. Lloyd*, 729 So. 2d 280, 285 (Ala. 1999).  "It has long been the law of Alabama that mistreatment of burial places and human remains will support the recovery of damages for mental suffering."  *Id.*  Therefore, the tort of outrage has typically arisen, as here, in the context of funerals and burials.  *See*, *e.g.*, *Gray Brown-Service Mortuary*, 729 So. 2d at 285-86 (successful outrage claim when cemetery personnel opened a casket, threw a chemical on the remains, and later removed most of the remains, tossing them into woods); *Cates v. Taylor*, 428 So. 2d 637, 640 (Ala. 1983) (successful outrage claim when defendants disrupted funeral and withdrew their permission for use of burial plot; *Levite Undertakers Co. v. Griggs*, 495 So. 2d 63, 65 (Ala. 1986) (successful outrage claim when an undertaker refused to release a body before receiving payment for his services).

In evaluating the merits of an outrage case, the Alabama Supreme Court has held that courts should look to the intent of the defendant, which cannot be decided without a full discovery record.  *See* 519 So. 2d at 904 (upholding verdict in

outrage case by looking at intent of defendant).  In *Whitt*, the defendant stated that his conduct in reclaiming the land designated as a cemetery was an accident, but other evidence pointed to his knowledge that it was a cemetery.  *Id.* at 904.  After looking at the testimony presented at trial, the court found that the evidence "at the very least supports an inference that Whitt acted recklessly in clearing the land around the cemetery where relatives of the plaintiffs were buried."  *Id.* at 906.

Similarly, here, Defendants' intent must be examined in conjunction with their words in determining whether the conduct was outrageous.  Defendants were aware that their statements were false.  2nd E.H. Affid. ¶20.  It was not a matter of them accidently getting the facts wrong.  And the Defendants knew that their false statements would cause extreme emotional distress to Ms. Holloway and at any time Defendants could have contacted Ms. Holloway to verify the outrageous claims they made in their articles.  *Id.* ¶19, Ex. B.  Additional evidence on these issues is in the possession of Defendants and their agents and third parties.  Wood Affid. ¶¶10-11.  Ms. Holloway is entitled to a full discovery record.

Defendants also seem to argue that their conduct cannot be considered outrageous when other media outlets and Ms. Holloway were discussing Natalee's disappearance.  Defs.' Br. at 31, 33.  The case cited for this proposition, however, bears no relation to the facts in this case.  In *Grimsley v. Guccione*, the plaintiff had actually assisted in the preparation of one article, and it was the "synopsis" of that

article that appeared in *Penthouse*, the publication to which the plaintiff objected.
703 F. Supp. 903, 905 (M.D. Ala. 1988).  The plaintiff admitted that the
"substantially similar" article that appeared in *Penthouse* had appeared in several
other newspapers, but that none of those publications bothered her.  *Id.* at 908.
Therefore, the court found that the defendant's conduct could not be fairly
described as outrageous, and summary judgment was granted.  *Id.*

While the general subject of Natalee's disappearance appeared in the media,
including reports involving Ms. Holloway, no other publication printed
substantially the same false and graphic information, headlines, and details as
"reported" in the three articles.  Ms. Holloway did not invite the publication of the
substance of the articles through any of her interviews.  Indeed, Defendants
acknowledge that Ms. Holloway made media appearances in an "understandable
effort to generate interest in and information about her plight."  Defs.' Br. at p. 7.
She did not do so as an invitation to the tabloids to falsely claim that her daughter
was buried alive or tossed in a corpse filled casket when they knew these
statements were completely untrue.

Neither is there any evidence that Ms. Holloway was not bothered by any of
the other articles, as there was in *Grimsley*.  In *Grimsley*, the court found that while
there might have been minor factual errors, the article was not false in any material

way.  703 F. Supp. at 906.  But here, the falsity of the articles and the malice with which Defendants acted added to the outrage.  Holloway 2nd Affid. ¶20.

**2.     *Ms. Holloway has met the severe emotional distress requirement for the tort of outrage.***

Ms. Holloway suffered emotional distress so severe that no reasonable person would be expected to endure it.  *See generally* 1st E.H. Affid.  Upon seeing the June 28, 2010 Article, which claimed to have found Natalee's body in a bird sanctuary downstream from a water treatment facility, Ms. Holloway was distraught.  She had spent months searching and negotiating with a killer in an effort to find out what happened to her daughter and now a tabloid magazine had made up a story filled with lies about where her daughter's body was located.  *Id.* ¶16-19.  She could not eat or sleep, she lost weight, she had panic attacks, and she was constantly faint and nauseated.  *Id.* ¶14.  Her distress reached such a level that she feared she would be hospitalized.  *Id.* ¶17.

The December 6, 2010 Article, which claimed that Natalee was buried alive, was Ms. Holloway's worst nightmare in print.  1st E.H. Affid. ¶26.  When she saw the article, she because physically ill and had constant nightmares and thoughts of Natalee suffocating, choking, and attempting to dig out of her grave.  *Id.* ¶27.

The April 25, 2011 Article, which claimed that Natalee's body was "tossed" like garbage into a "corpse filled casket," left Ms. Holloway wishing the writers of these horrendous and indescribably painful articles would imagine how they would

feel if they saw a similar story written about their own children.  1st E.H. Affid.
¶29.  The pain of the vision of her daughter tossed into a corpse filled casket like a
piece of garbage caused Ms. Holloway debilitating pain, which is continuous
because the image created from the article does not go away.  *Id.* ¶30.

Defendants suggest that Ms. Holloway cannot meet her burden of showing
severe emotional distress by pointing to other publicity surrounding the case.  But
that is not the standard.  In *Gray Brown-Service Mortuary, Inc.*, the court examined
the testimony from the plaintiff concerning his mental anguish, including
testimony that he was upset and angry, that he had been miserable when he found
out what happened, and that when he thinks of good memories of his wife, he also
recalls how her remains were mistreated.  729 So. 2d at 286.  In this case, Ms.
Holloway has alleged mental anguish and submitted evidence of same.  *See
generally* 1st E.H. Affid.

In *Grimsley v. Guccione*, the court found that there was no evidence that the
plaintiff had suffered severe emotional distress when the plaintiff had admitted that
the primary cause of her emotional problems was not the article, but the
unexpected birth of her son.  703 F. Supp. 903, 908 (M.D. Ala. 1988).  That
evidence was sufficient to grant summary judgment.  *Id.*  Similarly, in *U.S.A. Oil,
Inc. v. Smith*, the court held that the plaintiff's emotional distress was not
sufficiently severe upon examining the testimony solicited at trial regarding other

causes for plaintiff's emotional distress and her pre-existing conditions.  415 So.

2d 1098, 1100-01 (Ala. Civ. App. 1982).  Here, however, Defendants have not

pointed to any evidence that Ms. Holloway cannot prove she suffered severe

emotional distress and in fact, Ms. Holloway has presented evidence of her

emotional distress.

**B.**     **Media defendants are not immune from liability under the tort of outrage.**

Defendants have argued that a media defendant cannot be subject to a claim

of outrage under Alabama law.  Defs.' Br. at 31.  They are wrong.

In the cases cited by Defendants, the tort of outrage was dismissed for

failure of the plaintiff to meet his burden.  The cases were not dismissed "out of

hand" simply because the claim was against the media.  In *Finebaum v. Coulter*,

the tort of outrage was dismissed because the statements could not reasonably be

interpreted as stating actual facts and because the plaintiff did not present evidence

that the statement was made with actual malice.  854 So. 2d 1120, 1129 (Ala.

2003).  In *Little v. Consolidated Publishing Co.*, the tort of outrage was dismissed

after discovery because plaintiff did not have substantial evidence that the

publications were based on improper racial motivations.  83 So. 3d 517, 527 (Ala.

Civ. App. 2011).  In that case, too, there had been depositions taken.  *Id.* at 520.  In

*Fitch v. Voit*, the court dismissed the tort of outrage, only finding that plaintiffs did

not meet their burden, but with no further discussion.  624 So. 2d 542, 544 (Ala. 1993).

In no case has there been a ruling that a media defendant is simply immune from the tort of outrage as Defendants urge.

**C.    Ms. Holloway's tort of outrage is not barred by any "of and concerning" requirement.**

Defendants have argued that a plaintiff bringing an action for the tort of outrage based on a publication must prove that the publication is "of and concerning" her.  Defs.' Br. at 33.  Although this is not a requirement for the tort of outrage, Ms. Holloway herself is identified in the articles such that they are "of and concerning" her.  *See supra* Section II.C. (identifying the statements concerning her in each of the articles).

Defendants' argument flies in the face of Alabama law, which recognizes that mistreatment of burial places and human remains will support the tort of outrage; those courts did not deny the claim because the mistreated person themselves did not bring the claim.  Neither does *Fitch v. Voit* support Defendants' argument; that case simply said that those plaintiffs did not meet their burden on outrage, but there was no discussion of why.  624 So. 2d at 544.

Moreover, as implied in *Foretich v. Advance Magazine Publishers, Inc.* (*see supra*, Section II.C), to the extent the Court finds that "of and concerning" is a requirement in the tort of outrage, the requirement can be satisfied by showing that

Defendants intended to inflict emotional distress on Ms. Holloway.  Ms. Holloway has presented evidence that Defendants were aware that the articles would cause her severe emotional distress.  2nd E.H. Affid. ¶19.[9]

For these reasons, Ms. Holloway has sufficiently pleaded the tort of outrage, and the motion to dismiss should be denied.  Because discovery has not yet begun, the record is undeveloped and it would be premature to dismiss the claim.  *White*, 2012 WL 1424916, *3.  Moreover, Defendants have not shown that Ms. Holloway would not be able to prove her case, such that their motion for summary judgment should also be denied.  *Fitzpatrick*, 2 F.3d at 1115-16.

## IV.   Ms. Holloway has stated a claim for invasion of privacy.

### A.   Ms. Holloway has alleged a personal right to privacy.

Defendants have characterized Ms. Holloway's invasion-of-privacy claim as a relational right of privacy, but her complaint alleges that it is her own emotional sanctum that was invaded.  Compl. ¶¶137-39.  As the Supreme Court of Alabama stated in *Phillips v. Smalley Maintenance Services, Inc.*, "[o]ne's emotional sanctum is certainly due the same expectations of privacy as one's physical environment."  435 So. 705, 711 (1983).  Alabama has adopted the Restatement

---

[9] Neither is Ms. Holloway bringing this action to recover for Natalee's humiliation, as suggested by Defendants' citation of *Santiesteban v. Goodyear Tire & Rubber Co.*, 306 F. 2d 9, 12 (5th Cir. 1962).  Ms. Holloway has alleged that due to the articles, she has suffered severe emotional distress, and it is her distress for which she is seeking recovery.  Compl. ¶¶134-135.

(Second) of Torts, § 652B, which provides that:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

*Phillips*, 435 So. 2d at 708.  Comments to Section 652B demonstrate that the invasion of privacy may be a physical intrusion, but may also "be by some other form of investigation or examination into his private concerns…."  Restatement (Second) of Torts, § 652B cmt. b; *Phillips*, 435 So. 2d at 710-11 (*quoting* cmt. b).

Alabama courts have also described the tort of invasion of privacy as the right of a person "to be free from unwarranted publicity."  *J.C. v. WALA-TV-, Inc.*, 675 So. 2d 360, 362 (*quoting Smith*, 37 So. 2d at 120)).  This privacy right may also be described as the right "to be free from the publication of false or misleading information about one's affairs."  *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 490 (1975).

Ms. Holloway's complaint has alleged that Defendants, through their "reporting" of false facts with actual malice, invaded her emotional sanctum, which would be highly offensive to the reasonable person.  Compl. ¶¶137-39.  She has therefore stated a cause of action, and Defendants have not offered any evidence showing that Ms. Holloway would not be able to prove these elements at

trial.  Ms. Holloway has further submitted evidence that Defendants invaded her emotional sanctum.  1st E.H. Affid. ¶5.

**B.     Even if Ms. Holloway's invasion-of-privacy claim were based on a "relational" right to privacy, her allegations state a claim.**

Even if this Court were to consider it based on a "relational" right to privacy, the claim would survive.  The Alabama Supreme Court conclusorily noted in *Fitch v. Voit* that Alabama has not recognized a "relational right of privacy."  624 So. 2d 542, 543 (Ala. 1993).  But the claim in that case, as described by the court below, was expressly for the "relational right of privacy," and the photograph at issue did not disclose the identity of the deceased victim's family.  *Fitch v. Voit*, 1993 WL 141588, at *3 (Ala. Cir. Ct. Jan. 6, 1993).  Under those circumstances, their privacy rights were not invaded.  *Id.*; *Fitch*, 624 So. 2d at 543.

Here, Ms. Holloway, unlike the family in *Fitch*, is alleging a violation of her personal privacy.  Moreover, the articles, unlike the picture in *Fitch*, do identify and include images of Ms. Holloway.  Her identity is disclosed, and under those circumstances, it is her privacy rights that were invaded.  Ms. Holloway, whether by name as in two of the articles, or more generically as references are made to Natalee's family, is identified in the articles.  *See supra*, Section II.C. (identifying the statements concerning Ms. Holloway in each of the three articles).

Additionally, the cases underlying the conclusory statement in *Fitch* do not hold that Alabama has never recognized a relational right of privacy.  In *Smith v.*

*Doss*, the court found that the broadcast of a public figure's will (in which no allegations regarding falsity or malice were made) was the subject of legitimate public interest. 37 So. 2d 118, 121 (Ala. 1948). The court further stated, "[w]e see no reason why the right of privacy of daughters might not be violated by unwarranted and offensive publicity with reference to their deceased father, but conclude for the reasons given that the allegations in this case do not state a cause of action." *Id.* In *Abernathy v. Thorton*, the Supreme Court of Alabama expressly stated that it would not consider the soundness of the plaintiff's cause of action based on alleged right "to be spared unhappiness through publicity concerning her dead son because of her relationship to him." 83 So. 2d 235, 237 (Ala. 1955). Rather, because the son had become a public character before his death, he had forfeited his claim to privacy, and any "relational right must be subject to at least the same limitations as the ordinary right of privacy." *Id.*

Here, the statements regarding Natalee were made with malice and reckless disregard, unlike in *Smith*. Further, Natalee did not become a public figure before her disappearance, so she never waived any claim to privacy as the son in *Abernathy* did.

## C.   Ms. Holloway states a claim for invasion of privacy even when the matter is of public concern.

Just as Defendants did with their First Amendment arguments, Defendants assert that once a matter is considered public concern, there are no limits as to what

can be published.  Defs.' Br. at 36.  But caselaw does place a limit:  the proper

inquiry to determine whether there is a privilege to publish on matters of legitimate

public interest is "whether <u>truthful information</u> of legitimate concern to the public

is publicized in a manner that is not highly offensive to a reasonable person."  *J.C.*

*v. WALA-TV, Inc.*, 675 So. 2d 360, 362 (Ala. 1996) (emphasis supplied) (*quoting*

*Campbell v. Seabury Press*, 614 F.2d 395, 397 (5th Cir. 1980)).

> The United States Supreme Court has also recognized that there are limits as

to what can be published regarding matters that are of public interest:

> Similarly, where the interest at issue is privacy rather than
> reputation and the right claimed is to be free from the
> publication of false or misleading information about one's
> affairs, the target of the publication must prove *knowing or
> reckless falsehood* where the materials published, although
> assertedly private, are 'matters of public interest.'

*Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 490 (1975) (emphasis added).

There is no First Amendment privilege to knowingly lie—even regarding matters

of public interest.  *Smith v. Doss*, cited by Defendants, does not require a different

outcome.  In that case, the publication involved a subject of public interest, but was

based on fact, with no allegations that the information was false. 37 So. 2d at 121.

> Ms. Holloway has alleged that Defendants published the articles with actual

malice and that they invaded her privacy and emotional sanctum.  Those

allegations sufficiently plead her cause of action, and Defendants' motion to

dismiss the invasion-of-privacy claim should be denied.  In *White*, even when the

31

plaintiff, the non-movant, did not cite cases supporting a finding of invasion of privacy under similar facts, this Court refused to dismiss the case, noting that it was the defendant's burden to show that the facts asserted by the plaintiff "do not plausibly support an invasion of privacy claim under Alabama law."  2012 WL 1424916, at *3.  Moreover, Defendants have not shown that there is an absence of actual malice, such that their motion for summary judgment should also be denied. *Fitzpatrick*, 2 F.3d at 1115-16.

## V.   Ms. Holloway's claims are not time-barred.

## A.    Ms. Holloway's claims for outrage and invasion of privacy accrued upon her emotional distress in learning of the June 2010 Article, which was after September of 2010.

Defendants have correctly stated that a two-year statute of limitations applies to the torts of outrage and invasion of privacy.  *See* Ala. Code §6-2-38(l); *Archie v. Enterprise Hosp. & Nursing Home*, 508 So. 2d 693, 695 (Ala. 1987) (holding that two-year statute of limitations applies to tort of outrage or intentional infliction of emotion distress); *see also Shows v. Morgan*, 40 F. Supp. 2d 1345, 1363 (M.D. Ala. 1999) (applying Ala. Code § 6-2-38(l) to invasion-of-privacy claim).  Defendants have misstated when the statute begins to run, however.

While a cause of action for a defamation runs from the date of publication, a cause of action for outrage and emotional distress does not accrue until the plaintiff is entitled to maintain the action, which is only when the defendant's actions have

caused the plaintiff emotional distress.  *Martin v. Hodges Chapel, LLC*, 89 So. 3d 756, 763 (Ala. Civ. App. 2011).  Critically, both the tort of outrage and an invasion-of-privacy claim have emotional distress as an element.  *Phillips*, 435 So.2d at 708 (addressing invasion-of-privacy claim); *Martin*, 89 So. 3d at 767 (addressing tort of outrage).

In *Martin*, the plaintiffs sued a funeral home in June 2010 for negligence and outrage after learning in May 2009 that the funeral home had provided incorrect information regarding the location of family members' burial sites.  *Id.* at 759-60. The court cited "[t]he very basic and long settled rule" that a statute of limitations begins to run when the cause of action accrues and that a cause of action accrues "as soon as the party in whose favor it arises is entitled to maintain an action thereon."  *Id.* at 766 (*quoting Garrett v. Raytheon Co.*, 368 So. 2d 516, 518-19 (Ala. 1979), *overruled on other grounds by Griffin v. Unocal Corp.*, 990 So. 2d 291, 293 (Ala. 2008)).  For the tort of outrage, the court held that the cause of action did not accrue until May 2009, when the plaintiffs' emotional distress occurred upon learning that the funeral failed to identify the correct location of family members' burial sites, and therefore, the trial court had erred in entering judgment on the tort of outrage despite the family members being buried more than two years before the complaint was filed.  *Id.*

Here, too, Ms. Holloway learned of the June 28, 2010 article sometime in or

after September of 2010 and that is when she suffered the emotional distress.  1st

E.H. Affid. ¶15.  Her claim relating to that article was brought less than two years

later and is not time-barred.  *See* Compl. (filed June 20, 2010).

**B.    Alabama law has not held that the torts of outrage and invasion of privacy accrue upon publication, despite recognizing a single-publication rule in defamation actions.**

Defendants have cited at length several cases dealing with defamation and

the single-publication rule in an attempt to argue that Ms. Holloway's causes of

action for outrage and invasion of privacy accrued upon publication of the June 28,

2010 article.  But no Alabama case has held that a cause of action for the tort of

outrage or invasion of privacy accrues at the time of publication.  In Alabama, the

single-publication rule, which states that a single, integrated publication of a

magazine is treated as a single unit and only gives rise to one cause of action, has

been limited to actions <u>for defamation</u>.  *Patterson v. United Companies Lending*

*Corp.*, 4 F. Supp. 2d 1349, 1356 (M.D. Ala. 1998); *Poff v. Hayes*, 763 So. 2d 234,

242 n.5 (Ala. 2000) (*citing Age-Herald Publ'g Co. v. Huddleston*, 92 So. 193, 197

(1921)).

**1.    *Alabama focuses on the type of injury in order to determine when a cause of action accrues.***

Even in an Alabama case that held that the statute of limitations for actions

alleging defamation begins to run "from the date of publication," the court focused

on the type of injury at issue.  In *Poff v. Hayes*, the Supreme Court of Alabama

held that the statute of limitations for defamation "prescribes a period that runs from the date of publication" because "that is the date on which the injury to the plaintiff's reputation occurs and the cause of action is completed." *Poff v. Hayes*, 763 So. 2d 234, 242 (Ala. 2000); *see also Butler v. Town of Argo*, 871 So. 2d 1 (Ala. 2003) ("The foundation of an action for libel or slander is a malicious injury to reputation….") (citations omitted). Thus, in analyzing when the cause of action is completed, the court was applying the same "basic and long settled rule" cited in *Martin*:   the cause of action accrues only when the party can maintain an action.

In *Harris v. Winter*, the plaintiff alleged both libel and fraud for intentional misrepresentation of his credit against the defendant for a report that the defendant made to a credit reporting company.   379 So. 2d 588 (Ala. 1980).   In that case, the Supreme Court of Alabama did *not* simply look at the one publication and state that both causes of action accrued at the time the letter was sent.   Rather, the court first reiterated its prior holdings that for a libel action, the cause of action accrued when the libelous matter is published.   *Id.* at 590.   The court then separately examined when a cause of action for fraud accrued, which is at the time when the perpetration of the fraud is discovered by the victim.   *Id.*   In that case, the plaintiff had written a letter to the defendant when he discovered the report, and more than one year had passed, so the fraud action was time-barred.   *Id.*   But this case is instructive because even when an intentional tort was involved and the basis for

that tort was a publication, the court analyzed each cause of action separately.  The court did not blindly apply the rule suggested by Defendants—that the cause of action accrues at the time of publication.

In this case, the Court should focus on the two causes of action alleged—the tort of outrage and invasion of privacy—to determine when the cause of action accrues.  Because emotional distress is an element for both causes of action, the causes of action were not complete until Ms. Holloway suffered the emotional distress.  Under *Harris*, this is the rule for tort actions even when the tort action involves a publication.

## 2. *The single-publication rule has been limited in Alabama to defamation actions.*

In some of the cases cited (but not analyzed) by Defendants, other courts outside Alabama have found an invasion-of-privacy claim involving a publication to accrue at the same time as a defamation claim. [10]  Those courts have applied the single-publication rule to extend to the accrual of the cause of action.  But no

---

[10] For example, in *Khaury v. Playboy Publications, Inc.*, the federal district court in New York held that the single-publication rule was applicable to any tort, including an invasion-of-privacy claim, arising out a mass communication.  430 F. Supp. 1342, 1345 (S.D.N.Y. 1977).  The single-publication rule in New York states that the publication of a defamatory article in a mass distributed publication only gives rise to one cause of action, which arises when the finished product is released by the publisher for sale.  *Id.* at 1344; *see also Bradford v. Am. Media Operations, Inc.*, 882 F. Supp. 1508 (E.D. Pa. 1995) (holding that under Pennsylvania's Uniform Single Publication Act libel and invasion-of-privacy claims began to run on the last date of publication, and refusing to apply discovery rule to the claims for such a widely published magazine).

Alabama case has held the same.

Although Alabama has recognized the single-publication rule, it has not been applied to the tort of outrage or an invasion-of-privacy claim.  In P*atterson v. United Companies Lending Corp.*, the federal district court for the Middle District of Alabama stated that Alabama follows the single-publication rule in defamation actions.  4 F. Supp. 2d 1349, 1356 (M.D. Ala. 1998).  Under this rule, a single, integrated publication of a magazine is treated as a single unit and only gives rise to one cause of action for defamation.  *Id.* (emphasis added).  But, no Alabama case has applied the single-publication rule to a case involve the tort of outrage or an invasion-of-privacy claim.  *See, e.g.*, *Akin v. Time, Inc.*, 250 F. Supp. 306, 306-07 (N.D. Ala. 1966) (libel action); Poff, 763 So.2d at 242 n.5 (defamation claim); *Age-Herald Publ'g Co.*, 92 So. at 197 (claim for libel).

Therefore, the cases cited by Defendants in their footnote 13 are inapposite.  It is Alabama law, including the holding by the Supreme Court of Alabama in *Harris*, that governs.

**C.**   **Even if the Court were to find that the "publication date" determines when the torts of outrage and invasion of privacy accrued, Defendants have failed to meet their burden.**

Although Alabama law does not support a finding that the "publication date" determines when the torts of outrage and invasion of privacy accrue for statute of limitation purposes, even if this Court were to apply that standard, Defendants

have failed to meet their burden.  This is true whether the statute of limitations

issue is considered a part of Defendants' motion to dismiss or their motion for

partial summary judgment.

At the motion to dismiss stage, dismissal under Fed. R. Civ. P. 12(b)(6) "on

statute of limitations grounds is appropriate only if it is apparent from the face of

the complaint that the claim is time-barred."  *Tello v. Dean Witter Reynolds, Inc.*,

410 F.3d 1275, 1288 (11th Cir. 2005) (citations omitted); *see also La Grasta v.*

*First Union Securities, Inc.*, 358 F.3d 840, (11th Cir. 2004).  Should the Court

consider Defendants' motion on this point to be a motion for summary judgment,

then Defendants must affirmatively make a prima facie showing that there is no

genuine issue of material fact that the limitations period has expired; and only then

would Ms. Holloway be required to produce evidence creating a genuine issue of

material fact.  C*ork v. Marriott Int'l, Inc.*, 426 F. Supp. 2d 1234, 1239 (N.D. Ala.

2006); *see also Dooley v. AutoNation USA Corp.*, 218 F. Supp. 2d 1270, 1277

(N.D. Ala. 2002) ("The statute of limitations defense is an affirmative defense that

defendant has the initial burden to allege and prove.").

Here, although Ms. Holloway's claims, filed June 20, 2012, were brought

within two years of the magazine's cover date of June 28, 2010, Defendants have

argued that the cover date of the magazine "is of no consequence."  Defs.' Br. at

39.  Rather, Defendants have submitted an affidavit from Robert O'Neill and cited

cases addressing when magazines were disseminated to the public.  A comparison of O'Neill's conclusory statements to the detailed information in the cases shows that Defendants' evidence falls far short of meeting their burden of affirmatively showing that there is no genuine issue of material fact.

Two cases cited by Defendants show the level of detail the Court should consider in determining the date of publication for a mass distributed magazine. O'Neill's Affidavit does not meet the required level of detail.  In *Printron, Inc. v. McGraw-Hill*, cited by Defendants, the federal district court in New Mexico found that the cause of action for defamation based on an article in *Business Week* accrued on the "earliest date … the libel was substantially and effectively communicated to a meaningful mass of readers …"  35 F. Supp. 2d 1325, 1326 (D.N.M. 1998) (citations omitted).  In that case the Defendants submitted uncontroverted affidavits offering the following information:  (1) the date the issue shipped from the printing plant to wholesalers and post offices (September 1, 1994); (2) the date wholesalers began delivering to newsstands (September 2, 1994); (3) the date the issue was placed on display for sale (September 5, 1994); (4) the date by which "[s]ubstantially all subscribers" received the issue (September 6, 1994); and (5) the date that the issue was removed from newsstands (September 9, 1994).  *Id.* at 1326-27.  In that case, the court found that the article had been substantially and effective communicated to a meaningful mass of

readers by September 6, 1994, and thus the complaint was time barred. *Id.* at 1327.[11]

In *Glanville v. Glanville*, cited by Defendants, the Northern District of Georgia found that a defamation action based on an article published in *Esquire* was time-barred, and considered undisputed deposition and business records evidence regarding publication and delivery, including: (1) the date that the previous issue was to be removed from newsstand shelves; (2) the date the print order was approved for 904,000 copies; (3) the number of issues to go to subscribers; (4) the number of issues to go to newsstands; (5) the date all newsstand copies were printed; (6) the print completion date for all other copies; (7) the date the issues were delivered to common carriers for wholesalers; (8) the customary time for delivery from wholesalers to retail outlets; and (9) the date the subscription copies were mailed, including evidence from an independent monitoring service to determine dates that various subscribers received their issues. 1993 WL 256605, at *4-5 (N.D. Ga. Mar. 5, 1993).

In this case, O'Neill's affidavit falls short. He provides the dates on which the issue was printed, mailed to subscribers, available at newsstands, but also states that it was still available for purchase two years prior to Ms. Holloway's complaint

---

[11] Interestingly, the complaint was also filed more than three years (the New Mexico statute of limitation) after the issue was removed from newsstands—a fact not at issue in this case.

being filed.  O'Neill Aff. ¶¶4-5.  She filed her complaint on June 20, 2012 [Doc. 1]; the June 28, 2010 issue was still available for sale on June 28, 2010. O'Neill Aff. ¶5.  O'Neill's affidavit does not provide the number of subscribers, any information to know when those subscribers received the issue, or the number of copies delivered to newsstands.  The affidavit does not offer sufficient evidence to show when the June 2010 issue was substantially and effectively communicated to a meaningful mass of readers.  Defendants have not satisfied their burden.[12]

## CONCLUSION

Ms. Holloway has more than adequately pleaded her claims for outrage and invasion of privacy in her 140-paragraph complaint and affidavits, and Defendants have not offered any evidence that shows she cannot prove her claims.  An examination of the false and graphic words, pictures, and headlines shows Defendants' conduct was outrageous and invaded her emotional sanctum.  The articles are not be required to be "of and concerning" Ms. Holloway, although they are.  And her claim regarding the June 2010 article, brought within two years of the time she suffered the severe emotional distress and within two years of the issue still being available for sale, was timely.

---

[12] Ms. Holloway has also sought to stay consideration of the Motion for Partial Summary Judgment pending additional discovery, partly based on the additional discovery necessary to determine when the June 2010 article was substantially and effectively communicated to a meaningful mass of readers, should this Court ultimately determine that this is the applicable standard.

Defendants' motion seeks to expand First Amendment law by asking this Court to protect all statements regarding matters of public concern under the guise that such a limitless protection is required to give the breathing space required by the First Amendment even if they are complete lies.  Such an expansion of law is contrary to established precedent.  Calculated falsehoods and statements made with actual malice are not protected by the First Amendment.  Defendants' outrageous conduct in describing the body and burial of Ms. Holloway's daughter cannot be sanctioned by this Court or allowed to continue in the future without Ms. Holloway being afforded the legal right to redress it.

Respectfully submitted this <u>1st</u> day of October 2012.

**WOOD, HERNACKI & EVANS, LLC**      **LITTELL LAW FIRM**

<u>/s/ Stacey Godfrey Evans</u>                                   C. Elizabeth Littell Courson
 L. Lin Wood                                                            Alabama Bar No.s
 lwood@whetriallaw.com                                      ASB-5342-L75L
 Georgia Bar No. 774588                                      LIT 028
 (admitted *pro hac vice*)                                       elizabeth@littell-law.com
 Stacey Godfrey Evans
 sevans@whetriallaw.com                                    P.O. Box 242606
 Georgia Bar No. 298555                                     Montgomery, AL 36124
 (admitted *pro hac vice*)                                      334-649-0076

1180 West Peachtree Street
Suite 2400
Atlanta, Georgia 30309
404-891-1402
404-506-9111 (fax)

*Counsel for Plaintiff Beth Holloway*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing **PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO  DEFENDANTS' MOTION TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the attorneys of record.

This <u>1st</u> day of October 2012.

<u>/s/ Stacey Godfrey Evans</u>
Stacey Godfrey Evans